IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

STEPHEN B.E.,                    )
                                 )
            Plaintiff,           )
      v.                         )            1:25CV591
                                 )
FRANK BISIGNANO,                 )
Commissioner of Social           )
Security,                        )
                                 )
            Defendant.           )

## ORDER AND MEMORANDUM OPINION OF UNITED STATES MAGISTRATE JUDGE

The plaintiff, Stephen B.E. ("Stephen"), brought this action to obtain review of a final decision of the Commissioner of Social Security denying his claim for social security disability insurance benefits and a period of disability.[1] The Court has considered the certified administrative record, Stephen's motion for summary judgment, and the briefing from both parties. Because substantial evidence supports the determination of the Administrative Law Judge ("ALJ"), the Court will deny Stephen's request for remand or the award of benefits, as set forth below.

## I. PROCEDURAL HISTORY

Stephen filed an application for disability insurance benefits and a period of disability in February of 2014, alleging a disability onset date of November 1, 2006. (Tr. 145-46.) The applications were denied initially and upon reconsideration. (Tr. 78-81, 84-87.) After a hearing, ALJ Bowling determined on May 3, 2017 that Stephen was not disabled under the Act. (Tr. 13-61.) The Appeals Council denied a request for review. (Tr. 1-6.) This Court then remanded the action for further proceedings. (Tr. 896-97.)

A new hearing was held with a different ALJ ("ALJ Stefanelli") who also concluded that Stephen was not disabled under the Act, and the

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. *See* Docket Entry 4. By Order of

Reference, this matter was referred to the Undersigned to conduct all proceedings in this case pursuant to 28 U.S.C. § 636(c). Docket Entry 14.

Appeals Council again denied a request for review. (Tr. 821-73.) Stepehen challenged the new decision in this Court, which granted the Commissioner's uncontested motion to remand on April 27, 2022. (Tr. 1264-65.) ALJ Stefanelli held a new hearing on December 5, 2023 (Tr. 1204-35) and issued a new decision on January 17, 2024 (Tr. 1187-95), again concluding that Stephen was not disabled under the Act. The Appeals Council denied a request for review on May 7, 2025, making ALJ Stefanelli's 2024 decision the final decision for purposes of review. (Tr. 1168-74.) Therefore, unless otherwise noted, the Court at all times is addressing ALJ Stefanelli's 2024 decision.

## II. STANDARD OF REVIEW

While Section 405(g) of Title 42 of the United States Code "authorizes judicial review of the Social Security Commissioner's denial of social security benefits," *see Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006), the scope of that review is specific and narrow, *see Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Specifically, review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Put simply: the issue before the Court is not whether Stephen is disabled but whether the finding that he is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the correct process, set forth in 20 C.F.R. § 404.1520, to determine disability. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).

"The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. §§ 416.920(a)(4), 404.1520(a)(4)).

> Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her [or his] past relevant work; and (5) if not, could perform any other work in the national economy.

*Id.* at 472. A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.* at 473. "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the Secretary to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience." *Hunter*, 993 F.2d at 35 (internal citations omitted).

The ALJ determined at step one that Stephen had not engaged in substantial gainful activity during the relevant period, from his alleged onset date of November 1, 2006 through his date last insured of September 30, 2010. (Tr. 1189.) The ALJ next found the following severe[2] impairments at step two: intercostal neuralgia and thoracic radiculitis; and post-cholecystectomy pain syndrome.[3] (Tr. 1190.) At step three, the ALJ found that Stephen did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1. (Tr. 1191.)

The ALJ next set forth Stephen's Residual Functional Capacity ("RFC") and determined that he could perform a reduced range of light work except he should "never [be] required to climb ladders, ropes, or scaffolds

---

[2] ALJ Stefanelli noted that ALJ Bowling's 2017 decision found Stephen had severe migraines with resulting concentration limitations. (Tr. 1190; see Tr. 15-16.) But ALJ Stefanelli found Stephen's migraines did not meet the durational requirement of at least 12 months and that he did not have concentration, persistence, or pace problems. (Tr. 1190.) Stephen does not challenge that specific finding. *See Grayson v. Co. v. Agadir Int' l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (a party waives an argument by failing to present it in his opening brief). However, even if Stephen did challenge this finding, it would fail. As ALJ Stefanelli pointed out in her 2024 decision, Stephen has not reported concentration symptoms to medical providers and he is generally noted as alert, oriented, and as having normal concentration. (Tr. 1190, 313, 325, 270, 263, 251.) In April 2009, he did not indicated inability to concentrate as a

symptom. (Tr. 1190, 294.) He has had no sedation from medications. (Tr. 1190, 304.) He has also indicated that his pain is much improved with medications. (Tr. 1190, 303.)

[3] "'Intercostal Neuralgia' is 'pain in the chest wall due to neuralgia of one or more of the intercostal nerves.' 'Neuralgia' is '[p]ain of a severe, throbbing, or stabbing character in the course or distribution of a nerve.' 'Intercostal' is defined as '[b]etween the ribs.'" *Ramon M. v. Berryhill*, No. CV CBD-18-2025, 2019 WL 2436938, at *6 n.4 (D. Md. June 10, 2019) (citing and quoting *Stedmans Medical Dictionary*, *available on* Westlaw at §§ 599340, 599220, and 450160.). A "cholecystectomy" involves the surgical removal of the gall bladder. *See Stedmans*, § 169870. "Radiculitis" is a disorder of the spinal nerve roots. *Id.*, § 748650.

necessary to perform work duties; should have no concentrated exposure to hazards, such as heights or dangerous equipment; and would be able to change position every 2 hours." (Tr. 1191.) At the fourth step, the ALJ determined that Stephen was unable to perform his past relevant work. (Tr. 1193.) Last, at step five, the ALJ concluded that there were other jobs in the national economy that Stephen could perform. (Tr. 1194.)

IV. DISCUSSION

In his appeal, Stephen asserts only that "[t]he ALJ failed to properly evaluate [his] complaints of pain." Docket Entry 12 at 11. The record demonstrates otherwise, as set forth below.

A. The RFC Determination.

The RFC measures the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairments and any related symptoms (e.g., pain). *See* 20 C.F.R. § 404.1545(a)(1); *see also Dunn v. Colvin*, 607 F. App'x 264, 272 (4th Cir. 2015) (unpublished) (claimant's RFC is "[a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s)") (internal citation omitted); *Hines*, 453 F.3d at 562. The RFC includes both a "physical exertional or strength

limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

"Social Security Ruling 96-8p explains that the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (internal quotations omitted). An ALJ need not discuss every piece of evidence in making an RFC determination. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). Yet, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." *Brown v. Commissioner*, 873 F.3d 251, 269 (4th Cir. 2017). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only [then] may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

The Fourth Circuit has held that "meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion."

4

*Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (explaining that "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion"). As noted earlier, the ALJ "must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (alteration in original) (quoting *Monroe*, 826 F.3d at 189). Failure to do so constitutes reversible error. *See Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017). Where an ALJ's "analysis is incomplete and precludes meaningful review," remand is appropriate. *Monroe*, 826 F.3d at 191.

Moreover, "[a]n ALJ assesses the credibility of a claimant's subjective statements about his condition as part of the RFC assessment," *Ladda v. Berryhill*, 749 F. App'x 166, 170 (4th Cir. 2018) (unpublished), using a two-part test: "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged,'" *Craig*, 76 F.3d at 594 (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)).

If such an impairment exists, the ALJ must then consider, as the second prong of the test, all available evidence, including the claimant's statements about pain, to determine whether the claimant is disabled. *Id*. at 595-96. In so doing, the ALJ need not credit them if they conflict with the objective medical evidence or if the underlying impairment could not reasonably be expected to cause the symptoms alleged. *Id*. Where the ALJ has considered the relevant factors, *see* 20 C.F.R. § 404.1529(c)(3), and heard the claimant's testimony and observed his or her demeanor, the Court will defer to the ALJ's determination regarding those subjective complaints. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

Those relevant factors include:

(i)     [Plaintiff's] daily activities;

(ii)    The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;

(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate his pain or other symptoms;

(v)     Treatment, other than medication, [Plaintiff] receive[s] or [has]

5

received for relief of his pain or other symptoms;

(vi) Any measures [Plaintiff] use[s] or [has] used to relieve his pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

Here, the ALJ completed the two-step *Craig* analysis. As a preliminary matter, the ALJ summarized Stephen's subjective complaints. (Tr. 1192.) Specifically, Stephen alleged that he was disabled because of "difficulties sitting, standing, and walking for long periods during the relevant period. He indicated that he could lift up to 20 pounds at one time, sit for up to 2 hours, and stand for 2 hours at a time. The claimant asserted that he did not begin going to a pain clinic until 2008. The claimant testified that he had difficulty concentrating." (Tr. 1192, citation omitted.)

The ALJ then concluded that Stephen's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . ." (Tr. 1192.) Next, the ALJ performed step two of the analysis, concluding that Stephen's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 1192.)

The ALJ then gave good reasons for partially discounting Stephen's subjective allegations. First, the ALJ pointed out that though Stephen at times reported pain at medical appointments and also demonstrated tenderness over his ribs (Tr. 1192, 248-49, 270), *see* 20 C.F.R. § 404.1529(c)(3)(ii) (ALJ considers location, duration, frequency, and intensity of claimant's pain in evaluating subjective allegations), he otherwise demonstrated mostly normal findings of no edema; no erythema; no allodynia; no hyperalgesia; normal strength; normal tone; a healthy, well-nourished, well developed appearance; intact sensation; normal movement of all extremities; no acute distress; normal reflexes; and normal gait, (Tr. 1192, 1193, 249, 270, 299-300, 365, 368, 812), *see* 20 C.F.R. § 404.1529(c)(4) (ALJ considers inconsistencies in evidence and the extent to which there are conflicts between claimant's statements and rest of the evidence in evaluating subjective complaints). Beyond this, repeated examinations during the relevant period showed normal

movement of extremities, motor strength, muscle bulk and tone, and/or normal gait. (Tr. 363, 365, 367- 68, 370, 372-73.)

Stephen asserts that this evidence and claims of normal findings have "nothing to do with intercostal neuralgia." Docket Entry 12 at 16. However, normal movement and walking are inconsistent with alleged debilitating pain. Notably, Stephen reported that movement, positioning, walking, bending, sitting, and standing aggravated his intercostal neuralgia pain. (Tr. 299, 345, 348, 352, 354.) Therefore, contrary to his argument, Stephen's ability to move normally was relevant evidence. Moreover, the ALJ was required to consider objective evidence in evaluating his alleged symptoms. 20 C.F.R § 404.1529(c)(2); *Craig*, 76 F.3d at 594.

Second, the ALJ considered Stephen's conservative treatment history of steroid injections and pain medication. (Tr. 1192, 249, 256, 270, 273, 286, 300, 377.) The ALJ also pointed out that in 2008, 2009, and 2010, Stephen reported that medication helped his pain. (Tr. 1192, 249, 267, 286, 303, 812.) In February 2009, Stephen said that Lyrica and Tramadol had been "very helpful," and he was able to partake in "normal activities as well as work because of the medication." (Tr. 1192, 286.) Stephen also reported that his medication did not cause any side effects. (Tr. 286.) In September 2009,

Stephen said steroid injections had helped his pain "to a certain degree" with his most recent one giving him three weeks of relief. (Tr. 812.) Stephen also said that Lyrica had been "very helpful," Tramadol gave him adequate pain relief, and "pain medication allows him to function." (Tr. 812.) *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (ALJ considers kind of treatment and its effectiveness in assessing allegations).

Stephen takes issue with the ALJ describing this treatment as conservative, Docket Entry 12 at 16-17, but in *Scharbrough v. Comm'r, Soc. Sec.*, No. 23-1830, 2024 WL 4371618, at *2 (4th Cir. Oct. 2, 2024), the Fourth Circuit rejected the very same argument. *Id.* ("[T]he ALJ did not err by labelling his treatment as conservative."). *See also* 20 C.F.R § 404.1529(c)(3)(iv)-(v) (ALJ considers medication and other treatment used to relieve pain/other symptoms in evaluating subjective symptoms). Accordingly, the ALJ acted reasonably in considering Stephen's conservative treatment in finding that the degree of his alleged symptoms was not entirely consistent with the evidence. (Tr. 1192.)

It was also reasonable for the ALJ to consider Stephen's reported improvement at medical appointments. (Tr. 1192). Stephen's reporting that treatment alleviated his pain undermines his extreme testimony. For example, Stephen testified that pain affected his ability

to concentrate when it was above six (Tr. 1220-21), but he told his treating doctor that his pain was "4 out of 10" and Lyrica brought it "down to 1 to 2 out of 10." (Tr. 248; *see also* Tr. 263, 286.) Stephen argues that it was wrong for the ALJ to consider his treatment regimen of injections and pain medication as conservative because intercostal neuralgia is difficult to treat and those were his only treatment options. Docket Entry 12 16. But he admitted this conservative approach was effective at relieving his symptoms. That is, doctors chose to treat his condition this way, and it worked. Stephen thus asks this Court to reweigh the evidence and find in his favor. However, an effective and conservative treatment regimen is probative evidence that the ALJ must consider. *See* 20 C.F.R. §404.1529(c)(3)(iv)-(v) (ALJ considers kind of treatment and its effectiveness in evaluating subjective allegations); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling").

Third, the ALJ also appropriately considered Stephen's daily activities in evaluating his alleged symptoms. (Tr. 1192.) *See* 20 C.F.R. § 404.1529(c)(3)(i) (ALJ considers claimant's activities in evaluating subjective allegations). She considered that in February 2009, Stephen reported being able to partake in normal activities, as well as

work because of medication. (Tr. 1192; 286 (2/6/09 ("[H]e is able to partake in his normal activities as well as work because of the medication."); 279 (11/14/08 ("able to perform his activities of daily living")).) The ALJ also noted that in July 2010, Stephen reported that he was working full time. (Tr. 1192; *see* Tr. 364, 306; 383.) And he estimated 75-85% pain relief with his current medications. (Tr. 364.)

Evidence of work during the relevant period is a legitimate factor the ALJ may consider when determining the consistency of a claimant's subjective claims of disability. *See Sigmon v. Califano*, 617 F.2d 41, 42-43 (4th Cir. 1980) ("The general rule is one amply supported by common sense: the [ALJ] can consider work done by the claimant after the alleged onset of disability as tending to show that the claimant was not then disabled."). Stephen's reporting at appointments that he could perform normal activities and worked is inconsistent with his testimony alleging complete disability. *See* 20 C.F.R. § 404.1529(c)(4) (ALJ considers inconsistencies in evidence and extent to which there are conflicts between claimant's statements and rest of the evidence in evaluating subjective complaints). Based on the foregoing, substantial evidence supports the ALJ's finding that the degree of Stephen's alleged symptoms was not entirely consistent with the evidence. (Tr. 1192.)

Fourth, this is not a case where an ALJ

8

disregarded all of a claimant's allegations. Instead, the ALJ only partially disregarded Stephen's allegations and accounted for his complaints of pain and difficulty with restrictions relating to movement, positioning, sitting, standing, and walking for long periods by assessing an RFC for light level work with postural and environmental limitations and the ability to change positions every two hours. (Tr. 1191-92, 299, 345, 348, 352, 354, 1215-17, 1220.) And the ALJ further found that Stephen could perform the requirements of a range of sedentary to light level jobs. (Tr. 1194.) This tracks with Stephen's testimony that he could lift up to 20 pounds and sit/stand each for two hours at one time. (Tr. 1215-17.) The ALJ was required to account for the limitations supported by the evidence, not every limitation Stephen alleged. *See* 20 C.F.R. § 404.1529(a). In light of all this, the subjective complaints analysis is legally correct, well supported, and susceptible to judicial review.

Stephen's reliance on *Arakas v. Comm'r. Soc. Sec. Admin.*, 983 F.3d 83, 95-97 (4th Cir. 2020) is misplaced. Docket Entry 12 at 12-13. In that case, the United States Court of Appeals for the Fourth Circuit reversed an ALJ's decision because he "effectively requir[ed]" that the claimant provide objective medical evidence to support her subjective complaints. *See* 983 F.3d 83, 96 (4th Cir. 2020). While the ALJ did

consider other evidence in the record, "his opinion indicate[d] that the lack of objective medical evidence was his chief, if not definitive, reason for discounting" the plaintiff's complaints. *Id.* at 97. This error was "particularly pronounced" as the claim involved fibromyalgia—a disease "that does not produce" objective medical evidence, and thus "normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects . . . of the disease." *Id.*

Given the nature of the disease, the Fourth Circuit concluded that ALJs "may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence." *Id.*; *see also Shelly C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 361 (4th Cir. 2023) (finding depression to be one of those other diseases). As to diseases that do produce such objective evidence, the Fourth Circuit held that ALJs are still prohibited from disregarding a claimant's subjective complaints "*solely*" because they are not substantiated by objective medical evidence. *Arakas*, 983 F.3d at 95 (emphasis added).

Here, to the extent Stephen contends that *Arakas* prohibits the discussion of objective medical evidence at all when it comes to intercostal neuralgia, he is mistaken. While an

9

ALJ should not discount a claimant's subjective complaints related to fibromyalgia based on objective medical evidence (or a lack thereof), *Arakas* itself indicates that an ALJ can "substantiat[e] the claimant's impairment" with that evidence. *Arakas*, 983 F.3d at 97-98 ("Objective indicators such as normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects of a claimant's fibromyalgia, based on the current medical understanding of the disease. If considered at all, such evidence—along with consistent trigger-point findings—should be treated as evidence *substantiating* the claimant's impairment.").

Additionally, the Fourth Circuit remanded in *Arakas* on this issue because the ALJ's decision "indicate[d] that the lack of objective medical evidence was his chief, if not definitive, reason for discounting Arakas's complaints." *Id*. at 97. The same cannot be said here, where the ALJ did not "effectively require[ ]" objective evidence or offer objective medical evidence as the "chief" or "definitive" reason to discount the intensity of Stephen's subjective complaints. *See id*. at 96. Instead, the ALJ amply demonstrated that she relied upon other evidence in the record, including Stephen's improvement upon treatment and activities of daily living (which included working), as justification for partially discounting Stephen's related symptoms.

And here, unlike with fibromyalgia, normal movement and gait were probative of Stephen not being in debilitating pain. Consequently, the ALJ here did not run afoul of *Arakas*. Finally, even assuming *arguendo* that the ALJ erred in considering objective medical evidence to assess Stephen's subjective symptoms, there is no evidence that Stephen was prejudiced as a result. *See*, *e.g.*, *Howard v. Comm'r of Soc. Sec.*, No. 3:22-CV-00127-FDW, 2023 WL 4111395, at \*7 n.5 (W.D.N.C. June 21, 2023) ("The ALJ mentioned objective imaging findings in her discussion of evidence of the record; however, in contrast to Claimant's assertions, the ALJ did not indicate in the opinion that it played a 'chief,' if any, role in her decision to discredit Claimant's subjective complaints."). For all of these reasons, the ALJ's subjective complaints assessment is legally correct, supported by substantial evidence, and susceptible to judicial review.

Last, Stephen asserts that his "claim should be remanded again because not only did the ALJ apply the incorrect legal standard again when evaluating [Stephen's] pain, but she also copied, word-for-word, the same improper reliance on objective medical evidence that led to a consent remand during the preceding civil action before this Court, and should lead to remand once again in the present case." *See* Docket Entry 12 at 12. However, in her current decision, ALJ Stefanelli used the correct legal standard, and provided sound

10

reasons supported by substantial evidence for partially discounting Stephen's subjective complaints. To the extent Stephen addresses ALJ Stefanelli's prior decision, the argument fails because it was vacated and is not the decision subject to review in this action. *See Hancock v. Barnhart*, 206 F. Supp. 2d 757, 763-64 n.3 (W.D. Va. 2002) (on remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted de novo). The decision under review now is legally correct, well supported, and susceptible to judicial review. It should be affirmed.

V. CONCLUSION

After careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct, supported by substantial evidence, and susceptible to judicial review. Accordingly, **IT IS HEREBY ORDERED** that Stephen's motion for summary judgment, Docket Entry 11, is **DENIED** and that the final decision of the Commissioner is upheld.

_____
JoAnna Gibson McFadden
United States Magistrate Judge

May 13, 2026
Durham, NC

11